IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLIED WORLD INSURANCE COMPANY, ALLIED WORLD SPECIALTY INSURANCE COMPANY, ALLIED WORLD NATIONAL ASSURANCE COMPANY, and UNITED STATES FIRE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES KEATING and AMERICAN CONSTRUCTION & INDUSTRIAL, LLC, <br><br> Defendants. | CIVIL ACTION NO: <br><br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Allied World Insurance Company ("AW Insurance"), Allied World Specialty Insurance Company ("AW Specialty"), Allied World National Assurance Company ("AW National," and collectively with AW Insurance, AW Specialty, and their parent entity, "Allied World"), and United States Fire Insurance Company ("USFIC") bring this action against Defendants James Keating and American Construction & Industrial, LLC ("American Construction") and hereby allege as follows:

**NATURE OF THE ACTION**

1.     This is an action brought against James Keating, a former surety claims handler employed by Plaintiffs who, over the course of three years, embezzled over $1 million from Plaintiffs. Keating accomplished this fraudulent scheme by creating bogus contracts and invoices, submitted that fraudulent documentation for payment on surety bond claims, and directing that funds on those bogus contracts be paid to American Construction—a company that was the *de facto* alter ego of Keating himself and that Keating formed for the sole purpose of embezzling

funds from Plaintiffs.  As set forth below, the documentary record of Keating's fraud is clear and unmistakable; thus, by this action, Plaintiffs seek to recoup the funds embezzled by Keating and to maintain the status quo in the meantime by preventing Keating and American Construction from accessing their accounts holding the embezzled funds.

**THE PARTIES**

2.      AW Insurance is a New Hampshire corporation with its principal place of business in New York, New York.  AW Insurance is a subsidiary of Allied World Assurance Company Holdings, Ltd. ("AW Holdings"), which in turn is a subsidiary of Fairfax Financial Holdings Limited ("Fairfax").

3.      AW Specialty is a Delaware corporation with its principal place of business in New York, New York.  AW Specialty is a subsidiary of AW Holdings, which in turn is a subsidiary of Fairfax.

4.      AW National is a New Hampshire corporation with its principal place of business in New York, New York.  AW National is a subsidiary of AW Holdings, which in turn is a subsidiary of Fairfax.

5.      USFIC is a Delaware corporation with its principal place of business in Morristown, New Jersey.  USFIC is a subsidiary of Crum & Forster Holdings Corp. ("Crum & Forster"), which in turn is a subsidiary of Fairfax.

6.      Keating is natural person domiciled in Paoli, Pennsylvania.  He is a licensed attorney in Pennsylvania in active standing.

7.      American Construction is a limited liability company organized under Pennsylvania law.  Based on publicly available records, Keating is the sole member of American Construction.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.     This Court has personal jurisdiction over Keating and American Construction because, among other things, Keating and American Construction sent false and fraudulent statements to Connecticut with the intent that Plaintiffs would rely on those statements and issue bogus payments to Keating and American Construction.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Connecticut.

## BACKGROUND

11.     Allied World is a global provider of insurance and reinsurance solutions.  Allied World provides property, casualty, and specialty insurance coverage, and has locations in the United States, Bermuda, the United Kingdom, Singapore, Canada, Australia, Hong Kong, Ireland, Malaysia, and Switzerland.

12.     One type of risk coverage that Allied World has offered is surety bonds.  Surety bonds guarantee that one party to a contract will fulfill its obligation to the other party.  Surety bonds are often issued in connection with construction contracts.  For example, a contractor may require a subcontractor to purchase a surety bond to guarantee that the subcontractor will complete the project satisfactorily (a "performance bond"), and the subcontractor in turn may require a surety bond to guarantee that it is paid for its work (a "payment bond").  In these contexts, the party whose performance is being guaranteed is called the "principal," the party requiring the surety bond is the "obligee," and the company issuing the surety bond is the "surety."

13.    If a principal fails to perform its obligations under a contract, the obligee under a surety bond is then able to file a claim seeking to have the surety pay to have the job completed. Once a claim is filed, it is typically assigned to a claims handler who will be responsible for evaluating the claim and making surety payments or arranging for another company to finish the work. If the claim is valid, the claims handler can elect to hire a replacement contractor to finish the work. In that case, the claims handler arranges for the surety to pay the replacement contractor directly—similar to an insurance company directly paying a contractor to repair damage covered by an insurance policy.

14.    At all times relevant here, Keating was employed as a claims handler for surety claims made on bonds issued by AW Insurance or AW Specialty.

15.    From 2014 to July 2019, Keating was employed by AW National to handle surety claims on bonds issued by AW Insurance and AW Specialty. Keating held the title of Assistant Vice President, Surety Claims, and reported directly to executives located in Allied World's Farmington, Connecticut office. In approximately July 2019, Allied World exited the surety bond business and transferred its existing portfolio of surety bonds business to its affiliate Crum & Forster. At approximately the same time, Keating was transferred from AW National to Crum & Forster's insurance subsidiary USFIC, where he continued to handle claims on the run off of surety bonds issued by AW Insurance and AW Specialty.

16.    At all times relevant, Allied World's operations team in Farmington, Connecticut was responsible for establishing surety claims files and reviewing requests that payments be made by surety claims handlers.

17.    At all times relevant, claims payment requests and supporting documentation were uploaded into the Allied World claims-handling system. A member of the Allied World operations

team located in Farmington, Connecticut was then responsible for reviewing the material submitted and instructing the relevant Allied World entity to issue a payment.

18.     As an employee of USFIC and AW National, Keating was required to adhere to those companies' Codes of Business Conduct and Ethics.  These Codes provide, among other things:

    a.    "Employees owe a duty to the Company to advance its legitimate interests when the opportunity arises.  It is improper for officers, directors and employees: … to use information received performing services for the Company for personal gain, or to otherwise compete in any way with the Company in its legitimate interests."

    b.    "Employees must not knowingly permit themselves to be placed in a position where their interests could become adverse to the Company's interests, including situations where the employee could be deemed to be competing with the Company."

    c.    "Transactions involving the Company and … an entity in which an employee has a material interest must be brought to the attention of the employee's supervisor to determine if the transaction poses a perceived, potential or actual conflict of interest."

    d.    "Employees must obtain written approval from their supervisor before accepting outside employment or serving as a director, trustee, officer, owner, partner or consultant of a for-profit organization, regardless of whether compensation in any form is received."

e.      "Every director, officer and other employee of the Company should avoid any situation where the personal interest of such director, officer or employee conflicts, or may appear or be likely to conflict, with any interest of the Company."

f.      "[N]o such officer, director, or employee shall either take for him or herself, any opportunity discovered through his or her employment or affiliation with the Company, or use corporate property, information, or position for his or her personal gain."

g.      "No director, officer or other employee shall participate on behalf of the Company in any negotiations or dealings of any sort with any non-affiliated person, firm, corporation, or entity, in which he or she has, either directly or indirectly, an interest."

19.      As recently as December 17, 2020, Keating certified that: he was "in compliance with the requirements of the Code"; he "d[id] not have any interest, affiliation or activity of any sort which would be a conflict of interest … under the Code"; he was "not an officer or director of any company … except as previously disclosed to and/or approved by the Board of Directors, Chairman or Secretary, as required by the provisions of the Code"; and he would "promptly disclose any facts which may appear to present a possible conflict of interest under the Code."

20.      Crum & Forster recently discovered that Keating abused the positions of trust and confidence he held at Crum & Forster and Allied World.  Using his knowledge of the Crum & Forster and Allied World claims-handling system, Keating exploited legitimate claims on surety bonds to make fraudulent payments over the course of at least three years, disguising his conduct by using dummy companies.

21.     Keating appears to have commenced his pattern of embezzlement in 2017, at the latest.  On August 2, 2017, Keating created a Letter of Intent purporting to be from Allied World to a "Robert Peterson" at American Construction, which used a Delaware P.O. Box as its address. The bogus letter stated Allied World's intent "to enter into a Time and Material contract for the balance of plumbing work needed" for certain projects that were the subject of a legitimate claim on a surety bond issued by Allied World.  A true and correct copy of this Letter of Intent is attached hereto as Exhibit A.

22.     Four months later, on December 28, 2017, Keating caused American Construction to enter into a bogus Construction Services Agreement with Allied World, specifying that American Construction would perform certain plumbing work for $12,500.  Keating signed the agreement on behalf of Allied World, and a "Robert Peterson" purportedly signed on behalf of American Construction.   A true and correct copy of this Construction Services Agreement is attached hereto as Exhibit B.

23.     With this contract in hand, Keating uploaded these documents into Allied World's claims-handling system and directed them to Allied World's operations team in Farmington, Connecticut, with a request that a payment be issued.  On January 2, 2018, Allied World, unaware of the fraudulent nature of the transaction, sent American Construction a check for $12,500.

24.     All of the paperwork Keating used to process this claim was bogus.  In fact, public records show that American Construction was not established until January 16, 2018—two weeks *after* Allied World sent a $12,500 check to the company.  The Certificate of Organization for American Construction lists the same address for the company as Keating's home in Paoli, Pennsylvania.  The Certificate of Organization lists the organizer of American Construction as SR5, LLC, a company established by Keating himself in November 2013.  True and correct copies

of the Certificates of Organization of American Construction and SR5, LLC are attached hereto as Exhibits C and D, respectively.

25.     In March 2018, American Construction filed a change of registered office, moving it from Keating's home address to Corporation Service Company.  Keating himself signed this form as a "Member" of American Construction.  A true and correct copy of this form is attached hereto as Exhibit E.

26.     None of American Construction's publicly available corporate documents lists the Delaware P.O. Box where Keating directed payments, and none of these documents lists anyone by the name of "Robert Peterson."  Upon information and belief, Keating changed the address of American Construction to further obfuscate the fraud he was perpetuating.  In addition, upon information and belief, "Robert Patterson" does not exist and is a fictitious character created by Keating in furtherance of his fraudulent scheme.

27.     Keating continued to perpetuate this scam for over three years, even after he was transferred to USFIC.  Keating repeatedly created bogus agreements or invoices, directed that false paperwork to Allied World's operations team in Connecticut, and arranged for payment to American Construction in satisfaction of the claim.  In that time, Allied World made 51 separate payments authorized by Keating to American Construction on dozens of surety bonds that were the subject of otherwise legitimate claims.  In total, Keating and American Construction embezzled at least $1,000,750.

28.     Upon information and belief, American Construction never performed the services it contracted to perform, and in fact, American Construction does not exist as a valid business entity—it is merely an alter ego of Keating himself.

29.     Crum & Forster only recently discovered Keating's fraudulent scheme, and it and Allied World are continuing to investigate transactions initiated by Keating.  On January 7, 2021, Keating was terminated for cause and confronted with the evidence of his embezzlement scheme.

**FIRST CAUSE OF ACTION**
**(Fraud, Against Keating and American Construction)**

30.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

31.     Throughout this fraudulent scheme, Keating and American Construction made numerous material misrepresentations and repeatedly concealed material facts from Plaintiffs. These fraudulent misrepresentations and omissions include:

    a.     Inventing bogus contracts, invoices, and other paperwork to support payments to American Construction

    b.     Forging signatures on bogus contracts;

    c.     Concealing from Plaintiffs that Keating was the sole member and alter ego of American Construction;

    d.     Falsely representing to Plaintiffs that American Construction was a legitimate company; and

    e.     Authorizing over $1 million in bogus claim payments without revealing these facts to Plaintiffs.

32.     Keating and American Construction knew that these misrepresentations were false at the time they were made.

33.     Keating and American Construction also had a duty to disclose the truth of their relationship and the bogus claim payments.  Among other things, Keating was in a fiduciary

relationship with Plaintiffs, and both Keating and his alter ego, American Construction, knew that it was necessary to reveal the truth of their relationship.

34.     Keating and American Construction made misrepresentations and concealed information with the intention that Plaintiffs would rely on those misrepresentations and omissions.

35.     Plaintiffs reasonably relied on these misrepresentations and omissions.

36.     As a result, Plaintiffs made at least $1,000,750 of fraudulent payments to Keating and American Construction, and incurred other damages in the course of this fraud and through their efforts to uncover the fraud.

37.     Keating's efforts to disguise his actions and his three-year course of fraudulent conduct, among other things, reveal that he and American Construction acted with actual malice and a wanton and willful disregard for the rights of Plaintiffs.

38.     For these reasons, Plaintiffs are entitled to actual damages in an amount to be proved at trial, but at least $1,000,750.  Plaintiffs are further entitled to punitive damages in an amount to be proved at trial.

## SECOND CAUSE OF ACTION
**(Statutory Theft (Conn. Gen. Stat. § 52-564), Against Keating and American Construction)**

39.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

40.     As a result of their fraudulent scheme, Keating and American Construction obtained at least $1,000,750 from Plaintiffs.

41.     Keating and American Construction intentionally deprived Plaintiffs of their property through a three-year fraudulent scheme to embezzle these funds.

42.     The conduct of Keating and American Construction was not authorized by Plaintiffs.  To the contrary, Keating and American Construction deceived Plaintiffs with affirmative misrepresentations and omissions.

43.     For these reasons, Plaintiffs are entitled to treble damages in an amount to be proved at trial, but at least $3,002,250.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty, Against Keating)

44.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

45.     As an Assistant Vice President of AW National and USFIC, Keating owed fiduciary duties to his employers and Plaintiffs.  Plaintiffs placed their trust and confidence in Keating—who is a licensed attorney—and relied on him to advise them on, among other things, the legitimacy of claims submitted under surety bonds.

46.     Keating abused his position of trust and violated the fiduciary duties he owed Plaintiffs.  Among other things, Keating breached his duty of loyalty by misappropriating company assets, and by misrepresenting and concealing numerous material facts from Plaintiffs, including:

    a.     Inventing bogus contracts, invoices, and other paperwork to support payments to American Construction

    b.     Forging signatures on bogus contracts;

    c.     Concealing from Plaintiffs that Keating was the sole member and alter ego of American Construction;

    d.     Falsely representing to Plaintiffs that American Construction was a legitimate company; and

e.    Authorizing over $1 million in bogus claim payments without revealing these facts to Plaintiffs.

47.    Keating's misconduct constitutes a willful and deliberate breach of his terms of employment with AW National and USFIC.  Keating's employment was subject to the terms of these companies' Code of Business Conduct and Ethics.  This Code expressly prohibited Keating from, among other things, "participat[ing] on behalf of [Plaintiffs] in any negotiations or dealings of any sort with any non-affiliated person, firm, corporation, or entity, in which [Keating] has, either directly or indirectly, an interest."  Keating violated these terms of employment through his fraudulent scheme.

48.    Plaintiffs have suffered actual harm as a result of Keating's breaches of his fiduciary duties, including the payment of fraudulent claims to American Construction and the costs of investigating and prosecuting Keating's disloyalty.

49.    Keating's efforts to disguise his actions and his three-year course of fraudulent conduct, among other things, reveal that he acted with actual malice and a wanton and willful disregard for the rights of Plaintiffs.

50.    For these reasons, Plaintiffs are entitled to actual damages in an amount to be proved at trial, but at least $1,000,750.  Plaintiffs are further entitled to punitive damages in an amount to be proved at trial.  Plaintiffs are further entitled to disgorgement of all compensation they paid to Keating.

## FOURTH CAUSE OF ACTION
### (Breach of Contract, Against American Construction)

51.    Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

52.     As part of Keating's fraudulent scheme, he entered into numerous contracts with American Construction on behalf of Plaintiffs, under which American Construction would purportedly perform construction services in return for payments.

53.     Plaintiffs made all payments pursuant to the terms of those contracts.

54.     American Construction did not perform its part of the bargain.  In fact, these contracts were bogus and were entered into by fraudulent means over forged signatures of a fictitious person, "Robert Peterson."

55.     As a result, Plaintiffs made bogus payments to American Construction and its alter ego Keating, and incurred other damages.

56.     Because Plaintiffs were fraudulently induced to enter into these contracts, they should be rescinded and American Construction should be compelled to disgorge all compensation it was paid pursuant to those contracts.

57.     In the alternative, Plaintiffs are entitled to actual damages in an amount to be proved at trial.

### FIFTH CAUSE OF ACTION
#### (Breach of the Covenant of Good Faith and Fair Dealing, Against American Construction)

1.     Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

2.     As part of Keating's fraudulent scheme, he entered into numerous contracts with American Construction on behalf of Plaintiffs, under which American Construction would purportedly perform construction services in return for payments.

3.     Those contracts contained an implied covenant of good faith and fair dealing in the performance and in enforcement of those contracts.

4.      American Construction acted to impede or interfere with Plaintiffs' rights to receive the benefits they reasonably and justifiably expected to receive from those contracts.  American Construction acted dishonestly and in bad faith in the execution or performance of these contracts. Not only did American Construction not perform its part of the bargain, these contracts were bogus and were entered into with an improper motive and by fraudulent means over forged signatures of a fictitious person, "Robert Peterson."

5.      As a result, Plaintiffs bogus payments to American Construction and its alter ego Keating, and incurred other damages.

6.      Plaintiffs are entitled to actual damages in an amount to be proved at trial.

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment, Against Keating and American Construction)**

7.      Plaintiffs repeat and reallege the allegations contained in all prior paragraphs as if fully set forth herein.

8.      Over the course of a three-year fraudulent scheme, Keating and American Construction received benefits from Plaintiffs of at least $1,000,750.

9.      Keating and American Construction were not entitled to these benefits in the first place, as they were procured by fraudulent misrepresentations and omissions, and bogus contracts.

10.     The retention of these benefits without payment would be unjust.

11.     For these reasons, Plaintiffs are entitled to actual damages in an amount to be proved at trial, but at least $1,000,750.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Keating and American Construction, and respectfully request the following relief:

1.      Plaintiffs' actual damages in an amount to be proved at trial, but at least $1,000,750;

- 14 -

2.      Punitive damages in an amount to be proved at trial;

3.      Treble damages in an amount to be proved at trial, but at least $3,002,250;

4.      Disgorgement of all compensation Plaintiffs paid to Keating;

5.      Rescission of all contracts between Plaintiffs and American Construction and disgorgement of all compensation Plaintiffs paid to American Construction;

6.      Prejudgment remedies;

7.      Prejudgment and post-judgment interest to the maximum extent allowed by law;

8.      Plaintiffs' attorneys' fees, costs, and expenses in this action; and

9.      Such other and further relief as the Court deems just and appropriate.

**<u>JURY DEMAND</u>**

Pursuant to Fed. R. Civ. P. 38, Plaintiffs respectfully demand a jury trial as to all issues so triable.

Respectfully submitted,

Dated:  January 15, 2021
        Hartford, CT

_/s/ James L. Brawley_

James L. Brawley
Cristin E. Sheehan
MORRISON MAHONEY LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06103
(860) 616-4441
jbrawley@morrisonmahoney.com
csheehan@morrisonmahoney.com

OF COUNSEL
Jane M. Byrne (_pro hac vice_ forthcoming)
Guyon H. Knight (_pro hac vice_ forthcoming)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173
(212) 547-5400
jbyrne@mwe.com
gknight@mwe.com

_Attorneys for Plaintiffs Allied World
Insurance Company, Allied World Specialty
Insurance Company, Allied World National
Assurance Company, and United States Fire
Insurance Company_