# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ALLIED WORLD INSURANCE** | : | |
| **COMPANY, ALLIED WORLD** | : | **CIVIL CASE NUMBER:** |
| **SPECIALTY INSURANCE COMPANY,** | : | |
| **ALLIED WORLD NATIONAL** | : | **3:21-cv-000058-VLB** |
| **COMPANY, UNITED STATES FIRE** | : | |
| **INSURANCE CO.,** | : | **December 20, 2022** |
| **Plaintiffs**; | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES KEATING,** | : | |
| **AMERICAN CONSTRUCTION** | : | |
| **& INDUSTRIAL, LLC,** | : | |
| **Defendants**. | : | |

## DECISION DENYING PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT [DKT. 135]

This action involves an employee's alleged fraud scheme perpetrated against his former employer.  The four Plaintiffs—Allied World Insurance Company ("AW Insurance"), Allied World Specialty Insurance Company ("AW Specialty"), Allied World National Assurance Company ("AW National") and United States Fire Insurance Company ("USFIC")—are various subsidiaries of Fairfax Financial Holdings Limited that provide insurance and reinsurance solutions (collectively, "Plaintiffs").  The individual Defendant, James Keating, worked for AW National from 2014 through July 2019 as a surety claims handler after which he was transferred and performed the same work for USFIC until his termination on January 7, 2021.  Plaintiffs allege that Keating worked for a competitor; offered kickbacks to a friend; retained his own company to perform asset searches on claims; and stole over $1 million by directing 51 fraudulent surety bond claim

payments to his shell company, American Construction & Industrial, LLC ("American Construction"), the other Defendant (collectively, "Defendants"). These fraud schemes lasted for several years until Plaintiffs discovered the scheme and terminated Keating for cause.

Plaintiffs bring six causes of action: Count One, Fraud against both Defendants; Count Two, Statutory Theft, in violation of § 52-564 of the Connecticut General Statutes, against both Defendants; Count Three, Breach of Fiduciary Duty against Keating; Count Four, Breach of Contract against Defendant American Construction; Count Five, Breach of Implied Covenant of Good Faith and Fair Dealing against Defendant American Construction; and Count Six, Unjust Enrichment against both Defendants. Plaintiffs now move for summary judgment on all counts except Count Five, arguing Count Five is moot if summary judgment is granted on the other Counts. (*See* Dkt. 135 (Mot. Summ. J.).)

Defendants never responded. As is required by the Second Circuit, this Court has reviewed Plaintiffs' 56(a)(1) Statement to assess whether each statement of material fact is supported by admissible evidence. *See Jackson v. Federal Express*, 766 F.3d 189 (2d Cir. 2014). The Court finds Plaintiffs' evidence suffers from two significant shortcomings. First, Plaintiffs extensively cite Keating's deposition to prove each count—but Plaintiffs incorrectly make an adverse inferences wherever Keating invoked his Fifth Amendment right against self-incrimination, which is premature at the summary judgment stage. Second, Plaintiffs submit a declaration from AW Insurance's Executive Vice President and Head of North American Claims Group Kelly Doherty-Schaffner who makes factual

conclusions but does not specify the underlying evidence or personal knowledge on which she relied.  The declaration, therefore, cannot serve as evidence for the majority of the 56(a)(1) Statement where it is cited.

For these reasons and others described more fully below, Plaintiffs' Motion for Summary Judgment is DENIED.

## FACTUAL BACKGROUND

Plaintiffs filed a Local Rule 56(a)(1) Statement establishing the evidence in their favor.  Consistent with their failure to file an opposition, Defendants never filed a Local Rule 56(a)(2) Statement.  The following factual background is a summary of the admissible evidence presented in Plaintiffs' Local Rule 56(a)(1) Statement, taken as undisputed and construed in a light most favorable to the non-movants.  *See* D. Conn. L. Civ. R. 56(a)3.

I.    Defendant Keating and his Affiliated Companies

Defendant James A. Keating lives in Pennsylvania where he is a licensed attorney.  (Dkt. 140 (Pls.' 56(a)(1) Stmt. ¶ 2 (citing Dkt. 138 (Pls.' Mot. Summ. J. Exs. 1–10) at Ex. 1 (Compl.)  ¶ 6 & Ex. 2 (Ans.) ¶ 6).)  Keating's home address is 1787 Jennings Way, Paoli, Pennsylvania, 19301.  (*See id.* ¶ 29 (citing Ex. 21 (Am. Construction Corp. Docs.) at AW0050896); Dkt. 139 (Pls.' Mot. Summ. J. Exs. 11–20) at Ex. 11 (W-2s).)  Keating began working for Plaintiffs at some point in 2014 (*see* Dkt. 139 at Ex. 11) and, until his termination date on January 7, 2021, he worked as a claims handler for surety claims made on bonds issued by AW Insurance or AW Specialty.  (Dkt. 140  ¶ 2 (citing Ex. 1 ¶ 14; Ex. 2 ¶ 14).)

Keating is affiliated with several companies.  The first one is SR5, LLC, ("SR5"), which was incorporated on November 18, 2013 and of which he is the sole

member.  (*Id.*  ¶ 9 (citing Ex. 6 (IRS Forms).)  SR5 is a member of Kodiak Asset Recovery, LLC ("Kodiak"), the second company with which Keating is (indirectly) affiliated.  (*Id.*  ¶ 24 (citing Ex. 13 (Kodiak K-1).)[1]  The third company is Defendant American Construction, which was created on January 16, 2018. (*Id.*  ¶ 29 (citing Ex. 20 (Am. Constr. Docs)).)  SR5 is the organizer. (*Id.*  ¶¶ 2, 29 (citing Ex. 1 ¶ 6; Ex. 2 ¶ 6; Ex. 20 at AW0050896.)   The business address was initially listed as 1787 Jennings Way, Paoli, PA, 19301 (Keating's home address).  (*Id.*  ¶ 29 (citing Ex. 20 at AW0050896).)

II.   <u>Alleged Unlawful Payments</u>

Plaintiffs have submitted evidence of three main types of payments— payments SR5 received, payments SR5 issued, and payments Plaintiffs made in reliance on Keating—which they allege are connected to one or both Defendants and constitute the unlawful conduct establishing each Count.  Below, the Court will describe the evidence in the light most favorable to the non-movant as is required. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); D. Conn. L. Civ. R. 56(a)3.

A.   *Payments SR5 Received*

On January 27, 2014, SR5 began acting as a Third Party Administrator for Harleysville Group, Inc. ("Harleysville" or "Nationwide") in a surety run-off program.  (*See id.*  ¶ 12 (citing Ex. 6 at SR5000035–36).)  In an e-mail dated October 20, 2014, Keating, on behalf of SR5, indicated a willingness to participate in the program through 2015.  (*See id.*)

---

[1] **Plaintiffs do not name Kodiak in their brief.  Rather, they refer to "Asset Search Firm 1."**

Between May 2015 and April 2016, an individual named Jonathan P. Cohen[2] issued eight checks made payable to SR5 for consulting services related to "Progressive," "Harleysville cases," "AWAC," and "HWIC." (*See id.* ¶¶ 16–17 (citing Ex. 8 (Cohen Checks).)

From 2016 through 2021, Mr. Cohen and Kodiak periodically deposited money into SR5's TD Bank account. (*See id.* ¶ 17 (citing Ex. 9 (TD Deposits).)

### B.   *Payments SR5 Issued*

From the end of 2015 through 2019, SR5 issued checks to various retailers. On December 2, 2015 and October 15, 2016, SR5 issued checks made payable to Raymour & Flanagan. (*See id.* ¶ 24 (citing Ex. 10 (SR5 Checks).) In 2018 and 2019, SR5 issued 12 checks to Lumber Liquidators for, by way of example, "James Keating Flooring 1787 Jennings Way Paoli PA"; Sterling Kitchens for, by way of example, "James Keating Kitchen Cabinets 1787 Jennings Way Paoli PA 19301"; National Financial Services for investment; Chester Valley Golf Club for "Aubrey Keating Wedding K1955." (*Id.*) In 2020, SR5 issued a check to Fense Sense for "deposit for pool fencing." (*Id.*)

### C.   *Payments Plaintiffs Made*

On August 2, 2017, Keating, on behalf of AW Insurance, sent a letter of intent to Robert Peterson of American Construction, concerning a Time and Material contract for two projects. (*See id.* ¶ 26 (citing Ex. 17 (Claim Docs.) at AW0050980).) The contract was signed by Keating and Robert Peterson. (*See id.* ¶ 27 (citing Ex.

---

[2] Plaintiffs describe the check-writer as "Attorney 1" but do not reveal the individual's identity. Because the public record identifies Mr. Cohen as the individual who wrote the checks, the Court use his name unless discussing Plaintiffs' brief.

17 at AW0050988.)  On January 2, 2018, AW Insurance paid $12,500 to American Construction for work on this contract.  (*See id.* (citing Ex. 18 (Claim Check)).) According to Pennsylvania Department of State public documents, this check was issued two weeks before American Construction's creation date. (*See id.* ¶ 29 (Ex. 20 at AW0050896).)

The Court notes that Plaintiffs submitted two charts, Exhibits 12 and 19, that their representative claims are "business records" reflecting payments Keating authorized, which Plaintiffs paid to American Construction and Kodiak.  (*See* Dkt. 137 (Pls.' Mot. Summ. J. Ex. C, Doherty-Schaffner Decl.) ¶ 23, 30.)  Specifically, Exhibit 12 is a chart that lists, in relevant part, a) American Construction or Kodiak as the payee, (b) the claim name, (c) payment amounts for each claim, and d) the payment authorization dates.  (*See* Dkt. 139 at Ex. 12 (Chart 1).)  Similarly, Exhibit 19 is a chart that lists, in relevant part, a) the claim, b) that Keating is the payment authorizer and c) that American Construction is the payee.  (*See id.* at Ex. 19 (Chart 2).)

After inspecting these Exhibits and the record, the Court concludes these Exhibits are summaries that, standing alone, cannot take the place of underlying evidence.  As Rule 1006 of the Federal Rules of Evidence explains,

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  While a summary could, in theory, be used to replace voluminous underlying evidence, the summary is only admissible if the entirety of

the underlying documents are themselves admissible.  *See Summaries of voluminous writings, recordings and photographs*, McCormick on Evidence, § 241 ("Since a summary admitted under this rule is being introduced substantively in place of the matters summarized, the voluminous materials must themselves be shown to be admissible, and courts must be scrupulous in assuring that the summary accurately portrays the contents of the underlying material and that a summary is necessary.").  For Plaintiffs to establish who authorized the payments and that these payments were actually made, they must submit the underlying documents to the Court.

### III.   Keating's Taxes

On April 1, 2019, Kodiak submitted an IRS Schedule K-1 (Form 1065) reporting income of $38,793 for 2018.  (*See id.*)  (SR5 is a member of Kodiak.)  (*See id.* ¶ 24 (citing Ex. 13).)

Keating's personal taxes for 2018 show that he claimed profits from SR5, including $38,793 from Kodiak.  (*See id.* (citing Ex. 14 (2018 Taxes) at JEF0000309, JEF0000350).)  He continued to claim profits from SR5 in 2019 and 2020, including $33,968 from Kodiak in 2019.  (*See id.* (citing Ex. 15 (2019 Taxes) at JEF0000049, JEF0000133).)

### IV.   Applicable Code of Ethics

On July 12, 2019, Keating e-signed USFIC's Code of Ethics, which prohibits conflicts of interest. (*See id.* ¶ 6 (citing Ex. 5 (USFIC Code of Conduct)).)  Under this Code of Ethics, directors, officers, and other employees may not compete with USFIC; use USFIC information for personal gain; participate in dealings or

negotiations in which they have a direct or indirect interest in the other entity; or receive gifts, payments, favors or entertainment from an entity with which USFIC does business.  (*See id.* ¶ 8 (citing Ex. 5 § I).)   Directors, officers and other employees must disclose potential conflicts of interest.  (*See id.*)

Plaintiffs submitted a slide deck dated October 2017, which is entitled "Allied World Assurance Company Holdings, GmbH, Code of Business Conduct and Ethics.  (*See id.* ¶ 6 (citing Ex. 4 (Code of Ethics Slide Deck 10/2017)).)  Unlike the USFIC Code of Conduct (Exhibit 5)—which Keating signed on July 12, 2019—there is no evidence that Keating actually received this document, signed-off on having reviewed it, or otherwise agreed to be bound by it.

## PROCEDURAL HISTORY

Plaintiffs filed this action on January 15, 2021.  (See Dkt. 1 (Compl.).) Discovery formally commenced in Spring 2021.   (*See* Dkts. 48 (26(f)) & 49 (Scheduling Order).)  While the initial discovery deadline was set for July 2, 2021, the case became bogged down in disputes—which Magistrate Judge Farrish oversaw—and did  not close until March 2, 2022.  (*See* Dkts. 124 (Order) & 132 (Status Report).)  Towards the end of discovery, Plaintiffs deposed Keating.  (*See* Dkt. 138 at Ex. 3 (Keating Dep.).)  He asserted his Fifth Amendment right against self-incrimination nearly the entire deposition.  *See id.*

Plaintiffs timely filed the instant Motion for Summary Judgment on April 1, 2022, making the opposition deadline April 22, 2022. (*See* Dkt. 135.)  Defendants never responded.   The Court issued an Order to Show Cause why summary judgment should not be granted on April 25, 2022.  (*See* Dkt. 142 (Order)).  Again on May 4, 2022, the Court notified Defendants the failure to respond to the summary

judgment briefing would result in summary judgment absent compelling circumstances. (*See* Dkt. 143 (Notice)).  Despite these two notices, Defendants still have not responded.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). The movant must do so by "citing to particular parts of materials in the record, including depositions, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Liberty Lobby,* 477 U.S. at 255; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not

**9**

sufficient."); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).

Put another way, "[i]f there is any evidence in the record that could reasonably

support a jury's verdict for the nonmoving party, summary judgment must be

denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d

313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

When the non-movant fails to oppose summary judgment, the court "must

still assess whether the moving party has fulfilled its burden of demonstrating that

there is no genuine issue of material fact and its entitlement to judgment as a

matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241,

244 (2d Cir. 2004).  While a court may consider unopposed facts undisputed for the

purposes of the motion, *see* Fed. R. Civ. P. 56(e)(2), it must still ensure all other

Rule 56 requirements are met, including that the underlying evidence supports

summary judgment.  *See Jackson*, 766 F.3d at 194 (explaining a Rule 56(a)(1)

"statement must reference admissible evidence (when presented at trial in the form

of testimony or other permissible method) in the record tending to prove each such

fact, e.g., deposition testimony, admissions, answers to interrogatories, affidavits,

etc…."); *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("In

the typical case, failure to respond results in a grant of summary judgment once

the court assures itself that Rule 56's other requirements have been met.").  After

identifying the material facts that are not in dispute, the Court may thereafter

consider summary judgment on its own.  *See* Fed. R. Civ. P. 56(e)(3).

## DISCUSSION

Plaintiffs move for summary judgment on Counts I through IV and VI, claiming that Count V is moot if the Court rules in Plaintiffs' favor on all other claims.  In addition to addressing each Count, Plaintiffs argue they are entitled to an adverse inference on every fact that Keating did not deny during his deposition, because he invoked his Fifth Amendment right against self-incrimination.

Defendants have not opposed the summary judgment motion.  Nor have they briefed whether an adverse inference is appropriate at the summary judgment stage.  Before addressing the merits of the summary judgment motion, the Court will first address two evidentiary issues: Plaintiffs' adverse inference request and Plaintiffs' improper declaration.

### I.   Evidentiary Issues

Admissibility of evidence principles "do not change on a motion for summary judgment…."  *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013).  A district court has "broad discretion in choosing whether to admit evidence."  *See Vivenzio*, 611 F.3d at 106.

### A.   *Adverse Inference*

The summary judgment standard requires the court to construe facts in a light most favorable to the non-movant.  *See id.* The Second Circuit has made it clear that this principle applies where a non-movant invokes the Fifth Amendment right against self-incrimination.  *See Stichting Ter Behartiging Van de Belangen v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005) ("Indeed, to the extent that his deposition is offered into evidence at trial, the defendants may be entitled to an instruction that the jury may draw adverse inferences against Pluimers on each question as to

which he asserted his Fifth Amendment privilege during the deposition. Even assuming that a jury might draw such inferences, however, we are required at summary judgment to draw all reasonable inferences in favor of the non-moving party. Doing so, we cannot conclude that Pluimers's silence resolves all genuine issues of fact on the question of Saybolt's reliance on Schreiber's advice."); *In re 650 Fifth Avenue and Related Properties*, 830 F.3d 66, 93 n.25 (2d Cir. 2016) (where the nonmovant relied on the Fifth Amendment during the deposition, the Second Circuit opined, "As we have previously held, a court may not draw negative inferences against a nonmoving party on a summary judgment motion."). *But see SEC v. Ahmed*, 308 F. Supp. 3d 628, 666 (D. Conn. 2018) (stating an adverse inference "can be applied at the summary judgment phase, balanced against other evidence in the record").[3]  Accordingly, at the summary judgment stage, the Court is prohibited from drawing an adverse inference against every fact Keating did not deny as a result of invoking his Fifth Amendment rights against self-incrimination during the deposition.

### B.   *Improper Factual Assertions in Plaintiffs' Declaration*

Plaintiffs submitted a declaration by AW Insurance's Executive Vice President and Head of North American Claims Group Kelly Doherty-Schaffner, whose factual assertions focus on Keating's allegedly unlawful conduct.  (Dkt. 137.)  She states the information in her declaration is based on her "personal

---

[3] Plaintiffs cite *SEC v. Ahmed* for the proposition that the court may draw an adverse inference at summary judgment.  But *Ahmed* is distinguishable because other evidence supported summary judgment independent from the adverse inference.  Furthermore, this Court must abide by Second Circuit precedent that explicitly forecloses the application of an adverse inference even when a Fifth Amendment privilege is asserted.

knowledge and experience" and her "review of certain documents—including among other things," Plaintiffs' Complaint, Defendants' Answer, Keating's email communications, Keating's billing and payment records, and <u>Keating's deposition</u>. (*See id.* ¶ 3.)

Rule 56(c)(4) requires a declaration to (1) "be made on personal knowledge," (2) "set out facts that would be admissible in evidence," and (3) "show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (citing Fed. R. Civ. P. 56(c)(4)).  "A court may therefore strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."  *Hollander v. Am. Cynamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000).

Ms. Doherty-Schaffner's declaration fails to satisfy the admissibility requirements under Federal Rule of Civil Procedure 56.  As a general matter, Ms. Doherty-Schaffner repeatedly fails to explain the basis for her factual assertions. She claims her declaration is based on her "personal knowledge" and a non-exhaustive list of documents that she only vaguely describes. (*See* Dkt. 137 ¶ 3.) But throughout her declaration, she does not specify—and therefore the Court cannot discern— which facts are based on what source.  For example, Ms. Doherty-Schaffner stated that "[w]hen he began working at [Plaintiffs], Keating received the company's employment manual and the company's Code of Business Conduct and Ethics"—but she does not refer to underlying documents identifying the particular

Code of Conduct or proving Keating received and/or signed it.  (*See id.* ¶ 8.)  Nor does she explain how she has personal knowledge of this fact or that she is otherwise competent to testify to the matter.  As another example, Ms. Doherty-Schaffner states that Keating retained an attorney in January 2015 to represent Plaintiffs, and the attorney earned more than $3 million on Keating-approved invoices.  (*See id.* ¶ 16.)  She again references no documents and fails to explain the basis for her knowledge.  Without specifying how she knows the information asserted, her declaration is more akin to an "adversarial memorandum," which is impermissible.  *See Hollander*, 173. F.3d at 198.

In some instances, Ms. Doherty-Schaffner improperly draws an adverse inference where Keating invoked his Fifth Amendment right against self-incrimination during his deposition.  For example, she cites Keating's deposition when she avers that "Nationwide paid Keating (through SR5) hundreds of thousands of dollars for Keating's work as a TPA for Nationwide."  (*See id.* ¶ 14.)  But Keating made no such admission; instead, he invoked his Fifth Amendment right against self-incrimination.  Ms. Doherty-Schaffner therefore mischaracterizes the record.

In other instances, Ms. Doherty-Schaffner vaguely references Plaintiffs' investigation into Keating's conduct without indicating whether she participated in or otherwise reviewed the investigation.  Even if one credited Ms. Doherty-Schaffner with personally participating in an investigation of Keating's conduct, she draws conclusions of fact based on unrevealed and unidentified material.  For example, Ms. Doherty-Schaffner claims that Plaintiffs "found no evidence that

American Construction had performed any of the services for which it was paid" and that they "also discovered that Keating had attempted to delete all records showing his approval of payments to American Construction from [Plaintiffs]'s claim files." (*See id.* ¶ 32.) But she does not even describe the investigation process or how the investigation came to this conclusion, let alone provide documentary evidence. The Court therefore finds these assertions are mere factual conclusions that fail to satisfy Rule 56(c)(4).

The Court acknowledges Ms. Doherty-Schaffner sometimes supports her assertions with documents in the record. Where this is the case, the Court has independently assessed the evidence. *See Hollander*, 173 F.3d at 198 (affirming district court's decision to strike affidavit provisions that "were mere summaries of evidence properly included elsewhere in the record" because "the evidence was separately considered by the district court").

Because it is unclear what information is based on Ms. Doherty-Schaffner's personal knowledge, what is based on improperly construed adverse inferences, and what is based on other documents—some of which are undisclosed and some of which are inadmissible—the declaration serves little purpose.

II.   <u>The Merits</u>

Throughout this case and including this motion, Plaintiffs have applied Connecticut law and Defendants have never objected. "[C]ourts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 n.2 (2d Cir. 2013). The Court therefore relies on Connecticut law to evaluate the merits of these common law claims.

### A.    *Count One: Fraud Against Both Defendants*

Plaintiffs make two principle arguments: first, that Keating committed fraud by falsely representing information that induced Plaintiffs to pay American Construction; and second, that Keating committed fraud by omitting information he had a duty to disclose, which induced Plaintiffs to pay companies Keating owned.  (*See* Dkt. 136 (MISO Mot. Summ. J.) at 19–23.)

A "false representation" can include an affirmative, express false misstatement or the "intentional withholding of information."  *See Pacelli Bros. Transp., Inc. v. Pacelli*, 189 Conn. 401, 407 (1983) ("The intentional withholding of information for the purpose of inducing action has been regarded, however, as equivalent to a fraudulent misrepresentation."); *Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 194 (D. Conn. 2007).

### 1.    Fraudulent Statement

Let's address the false <u>statement</u> first.  Plaintiffs argue that Defendants committed fraud when Keating, on behalf of Plaintiffs, entered into performance contracts with Defendant American Construction even though that company did not perform any work.  Specifically, Plaintiffs argue that Keating committed fraud "every time he requested that [Plaintiffs] make a payment to American Construction."  (Dkt. 136 at 19.)  Plaintiffs describe the scheme as follows: Keating would sign a "letter of intent" as Robert Peterson—a person who did not exist but purported to be from American Construction—promising to perform construction work for Plaintiffs.  (*Id.* at 20.)  Keating then submitted an invoice for payment even though American Construction did not perform work and he knew the company did not perform work.   In reliance on Keating's representations, Plaintiffs paid

16

American Construction, Keating's shell company.   Keating then repeated this process 51 times for a total of  $984,250 "in exchange for no value."  (*Id.* at 21.) Plaintiffs argue both Defendants are liable for Keating's actions.

To establish a Connecticut common law fraudulent misrepresentation action, the movant must prove the following elements:

> (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . [T]he party to whom the false representation was made [must claim] to have relied on that representation and to have suffered harm as a result of the reliance.

*Simms v. Seaman*, 308 Conn. 523, 548 (2013) (internal quotations marks and citations omitted).  "[T]he absence of any one of th[ose] [elements] is fatal to a recovery." *Edwards v. CBD & Sons*, No. 3:17-cv-00466 (SRU), 2018 WL 2303017, at *9 (D. Conn. May 21, 2018).  For the first three elements, evidence must be "clear, precise[,] and unequivocal." *Id.*

Plaintiffs rely heavily on Keating's deposition to establish these elements. Namely, Plaintiffs cite the deposition as evidence that Keating fraudulently signed the letter of intent purporting to be "Robert Peterson" of American Construction, that American Construction never performed work, and that Keating knew no work was being performed but that he nonetheless authorized payment.  (*See* Dkt. 136 at 20–21.)  But Keating did not testify about this information, because he asserted his Fifth Amendment right against self-incrimination.  Therefore, Plaintiffs do not cite any admissible evidence to support he made any <u>affirmative misrepresentation</u>.  Absent such evidence, the Court cannot conclude there is "clear, precise[,] and unequivocal" evidence establishing the first element.

17

*Edwards*, 2018 WL 2303017, at *9.  By failing to establish the first element, Plaintiffs cannot establish elements two and three.

What is left of the <u>admissible</u> evidence—Exhibits 9, 17, and 18—still fails to establish all elements of fraudulent misrepresentation.  When read together in a light most favorable to the non-movants, these Exhibits establish only: that Keating, on behalf of Plaintiffs, entered into a letter of intent with Robert Peterson (a representative from American Construction) on August 2, 2017, for plumbing work to be performed at a cost of $12,500, (Ex. 17); that James Paulhus, on behalf of AW Insurance, issued a check to American Construction on January 2, 2018, (Ex. 18); and that two deposits totaling $12,500 were made in April 2018 into SR5's TD account, (Ex. 9).[4]   While the evidence establishes Plaintiffs paid American Construction, it does not establish that Plaintiffs did so in reliance on a false representation made by Keating or American Construction.  Furthermore, it will be up to the jury to decide the significance of SR5's deposit of two checks, totaling the same amount several months later.  Therefore, summary judgment is DENIED on this ground.

### 2.    Fraudulent Omission

As for the <u>omission</u>, Plaintiffs argue that Keating failed to disclose the material fact that he owned "Asset Search Firm 1" and American Construction in breach of his fiduciary duty as an officer. (*See* Dkt. 136 at 21–22.)   Fraud by non-disclosure, i.e. fraud by omission, "expands on the first three of [the] four

---

[4] Plaintiffs argue this fraud scheme took place 51 times.  In support, they cite Exhibits 12 and 19, two summary charts listing claims in which American Construction or Kodiak were the payees.  The underlying documents have not been submitted to the Court.

elements" of fraudulent misrepresentation.  *Reville v. Reville*, 312 Conn. 428, 441

(2014).  Namely, it

> involves the failure to make a full and fair disclosure of known facts
> connected with a matter about which a party has assumed to speak,
> under circumstances in which there is a duty to speak . . . . A lack of
> full and fair disclosure of such facts must be accompanied by an intent
> or expectation that the other party will make or will continue in a
> mistake, in order to induce that other party to act to her detriment.

*Id.*  As explained below, the Court finds Keating held a fiduciary duty to Plaintiffs

as a matter of law, but Plaintiffs have failed to establish the other elements of a

fraudulent omission claim.

### i.   <u>Duty to Speak</u>

Not all employees owe fiduciary duties to their employers.  When the

potential fiduciary duty arises in a business setting, the Court must assess whether

an employee occupies "a position of trust and confidence," has "superior

knowledge, skill or expertise," and is expected to "represent the interests" of the

employer."  *Iacurci v. Sax*, 313 Conn. 786, 801 (2014); *see Tarpon Bay Partners LLC

v. Zerez Holdings Corp.*, 547 F. Supp. 3d 195, 214–15 (D. Conn. 2021) (applying

*Iacurci*, 313 Conn. at 213–15, to financial services business relationship); *Metro.

Enter. Corp. v. United Technologies Int'l Corp.*, CIV. 3:03CV1685 JBA, 2006 WL

522384, at *4 (D. Conn. Feb. 27, 2006) (stating that under Connecticut law, the duty

to speak, "i.e. to reveal information on which the plaintiff reasonably would be

expected to rely," arises "where the parties have 'a relationship of trust and

confidence' creating a 'duty to make a full disclosure'") (quoting *Egan v. Hudson

Nut Prods.*, 142 Conn. 344, 348 (1995)).  "The *unique* element that inheres a

fiduciary duty to one party is an elevated risk that the other party could be taken

advantage of—and usually unilaterally." *Iacurci*, 313 Conn. at 801 (emphasis in original).  The purpose of imposing a fiduciary duty in this context is to counter-balance the possibility of self-dealing that exists when the employee has "easy access to, or heightened influence regarding, another party's moneys, property, or other valuable resources." *Id.* at 801–02.

Plaintiffs contend that Keating owed a fiduciary duty to them.  To support their argument, Plaintiffs cite the Complaint—in which they allege Keating held a fiduciary duty—and Defendants' Answer.  While a defendant may admit any allegation in a complaint, *see* Fed. R. Civ. P. 8(b), Defendants made no such admission. (Dkt. 138 (Exs. 1–10) at Ex. 1 ¶ 45 & Ex. 2 ¶ 45.)  Rather, Keating asserted his Fifth Amendment right against self-incrimination.  Plaintiffs also cite Keating's deposition, which for the same reason does not support Plaintiffs' position.  Therefore, Plaintiffs have not presented any admissible evidence to support their contention that Keating owed a fiduciary duty to them. (*Id.*)

That being said, Plaintiffs submitted admissible evidence cited in their 56(a)(1) Statement, which supports a finding that Keating had a fiduciary duty and a duty to disclose his ownership interests to them.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.")  Specifically, evidence shows that Keating had the authority to enter into contracts for services on behalf of Plaintiffs.  For example, on behalf of Plaintiffs, Keating signed a letter of intent with American Construction in 2017. (*See* 56(a)(1) Stmt. ¶¶ 26–27,  (citing Ex. 17 at AW0050980).)  While evidence does not show that he wrote checks on behalf of Plaintiffs, his ability to sign

contracts shows Plaintiffs put him in "a position of trust and confidence" with an expectation he would "represent the interests" of the employer." *Iacurci*, 313 Conn. at 801.  Accordingly, the Court finds as a matter of law that Keating held a fiduciary duty to Plaintiffs.

        ii.        **Failure to Disclose a Known Fact Under a Duty to Speak**

       Typically, nondisclosure does not amount to fraud.  *See Duart v. Dep't of Corr.*, 303 Conn. 479, 498 n.17 (2012).  But there is an exception for fiduciaries. Under Connecticut law, a fiduciary has a duty to make a full disclosure "of all relevant facts which the fiduciary knows or should know." *See Pacelli Bros.*, 189 Conn. at 407–8.  In other words, "fraudulent nondisclosure or suppression arises from a failure to disclose known facts, and, as well, a request or an occasion or circumstance which imposes a duty to speak."  *Duart*, 303 Conn. at 498 n.17; *Sovereign Bank v. ACG II, LLC*, No. 08cv1600 (WWE), 2010 WL 363336, at *4 (D. Conn. Jan. 25, 2010) ("Fraudulent nondisclosure requires a failure to disclose known facts.").  This district has recognized that "liability for nondisclosure may arise where a defendant knows information 'necessary to prevent his partial or ambiguous statement of the facts from being misleading.'"  *Metro. Enter. Corp. v. United Technologies Int'l Corp.*, CIV. 3:03CV1685 JBA, 2006 WL 522384, at *4 (D. Conn. Feb. 27, 2006) (quoting Restatement (Second) of Torts § 551(2)).

       After assessing underlying evidence cited in Plaintiffs' 56(a)(1) Statement, the Court finds admissible evidence establishes SR5 was the organizer of American Construction and that Plaintiffs contracted with American Construction for services.  (*See id.*; Pls.' 56(a)(1) Stmt. ¶¶ 2, 29 (citing Ex. 1 ¶ 6; Ex. 2 ¶ 6; Ex. 20

at AW0050896).)  Admissible evidence also establishes Keating owned Kodiak indirectly, because he owned SR5 and SR5 held a 50% ownership in Kodiak.  (Pls.' 56(a)(1) Stmt.  ¶¶ 9 (citing Ex. 6) & ¶ 24 (citing Ex. 13).)

The undisputed evidence does **not** establish, however, that Keating failed to disclose this information.  Plaintiffs argue Keating "falsely certified to [Plaintiffs] that he did not hold any such [ownership] interest," in "Asset Firm 1."  But they only cite a) Ms. Doherty-Schaffner, who attests to these factual conclusions without providing support from underlying facts; and b) Keating's deposition where he invoked his Fifth Amendment right against self-incrimination.  (*See* Dkt. 136 at 22 (citing Dkt. 140 ¶ 25 (incorporating Ex. C ¶ 25 & Ex. 3) and Ex. 3 at 40:24-41:19).)  Plaintiffs also argue Keating approved payments to  Asset Search Firm 1 but "failed to disclose, among other things, all of the material facts regarding [his] and Attorney 1's beneficial ownership  of that company, and the excessive rates it charged without providing any additional benefit to [Plaintiffs]."  (*Id.*)  Again, to prove his failure to disclose this information, Plaintiffs only cite to Ms. Doherty-Schaffner's declaration and Keating's assertion of his Fifth Amendment right against self-incrimination—neither of which the Court considers here.  Absent evidence establishing Keating's failure to disclose information as a matter of law, the Court leaves Plaintiffs to their burden of proof at trial.

### iii.      Expectation and Intent to Induce

In addition to failing to disclose known facts, fraudulent nondisclosure requires "an intent or expectation by the declarant that the nondisclosure will cause a mistake by another to exist or to continue, in order to induce the latter to enter into . . . a transaction."  *Sovereign Bank,* 2010 WL 363336, at *4 (citing *Wedig*

*v. Brinster*, 1 Conn. App. 123, 131 (1983)); *Edwards*, 2018 WL 2303017, at *10 ("Non-disclosure may, however, amount to fraud when there is a failure to disclose known facts under circumstances that impose a duty to speak."). Keating's position as a fiduciary puts him in a position to expect that his employer would rely on him when entering into transactions with contractors. *See Iacurci*, 313 Conn. at 801 ("The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him."). Because Plaintiffs have not established that Keating failed to disclose facts that he had a duty to disclose, they have also failed to establish the requisite intent.

iv.      Harm

For the same reasons as above, the Court reserves this issue for trial.

B.      *Count Two: Statutory Theft*

Section 52-564 of the Connecticut General Statutes provides, "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Conn. Gen. Stat. § 52-564. As the Connecticut Supreme Court has explained, statutory theft is akin to larceny, which is defined by "fraudulent methods of taking property from its owner, including when a person obtains property by false pretenses." *Scholz v. Epstein*, 341 Conn. 1, 18 (2021) (citing Conn. Gen. Stat. §§ 52-564 (statutory theft) and 53a-119 (larceny)). The plaintiff must prove the following elements: "(1) defendant intentionally deprived plaintiff of property, (2) the property belonged to plaintiff, and (3) the defendant's conduct was unauthorized." *Andrade v. Kwon*, No. 3:08cv479 (SRU), 2012 WL 3059616, at * 7 (D. Conn. Mar. 26, 2012) (citing *Discovery Leasing Inc. v. Murphy*, 33 Conn. App. 303, 309 (1993)).

23

Plaintiffs argue that Keating (and by extension American Construction) committed statutory theft by authorizing Plaintiffs to issue payments to American Construction for work it did not perform—payments which were deposited into a bank account he personally owned and controlled for personal gain.  (Dkt. 136 at 24–25.)

As with Count One, Plaintiffs' evidence falls short.  To prove each element of statutory theft, Plaintiffs rely almost exclusively on Keating's assertion of the Fifth Amendment right against self-incrimination during his deposition.  (See *id.*)  As the Court has stated, it will not draw an adverse inference at the summary judgment stage. *See Stichting*, 407 F.3d at 55.  Therefore, this evidence cannot be used—as Plaintiffs propose—to establish that he "issue[d] payments to vendors he retained," that either Keating or American Construction had the requisite intent to deprive Plaintiffs of its property, that Plaintiffs made payments to accounts he controlled, that American Construction never performed any of the work it promised to do, and that American Construction diverted Allied World payments to SR5.  (*See* Dkt. 136 at 24–26.)

The only other evidence Plaintiffs offer are checks made by SR5 to Raymour & Flanagan, Lumber Liquidators, Sterling Kitchens, National Financial Services, Chester Valley Golf Club, and Fense Sense.  (*See* Ex. 10.).  Plaintiffs presume, without providing evidence, that SR5 used payments from Plaintiffs to fund the payments.  Simply put, this evidence standing alone fails to prove that Keating and American Construction (1) deprived Plaintiffs of their property and did so intentionally, (2) that the property belonged to Plaintiffs, and (3) that their conduct

was unauthorized.  *See Andrade*, 2012 WL 3059616, at *7.   Accordingly, summary judgment is DENIED as to both Defendants.

### C.      *Count Three: Breach of Fiduciary Duty Against Keating*

Plaintiffs argue that Keating owed a fiduciary duty to them and breached his duty of loyalty in four ways.  First, he worked as a third party administrator for a competitor, Harleysville, while working for Plaintiffs.  (Dkt. 136 at 28.)  Second, he entered into an illicit kickback agreement with "Attorney 1."  (*Id.*)  Third, he retained "Asset Search Firm 1" without informing Plaintiffs he held a 50% ownership interest.  (*Id.*)  Fourth, he authorized Plaintiffs to pay American Construction nearly $1 million, which he ultimately pocketed.[5]  (*Id.* at 29.)  Plaintiffs argue that Keating's unlawful profits totaled $1,655,286.41 and that he should also be required to forfeit $1,010,916.83, which constitutes his compensation during the time he breached his duties.

As the Court previously explained, *supra* in Part II(A)(2) of this Discussion, Keating owed a fiduciary duty to Plaintiffs because of his "position of trust and confidence," *Iacurci*, 313 Conn. at 801.   The Connecticut Supreme Court has explained that an employee's fiduciary duty is based on agency principles, meaning "the agent is obligated to exercise the utmost good faith, loyalty and honesty toward his principal or employer."  *See Wall Sys., Inc. v. Pompa*, 324 Conn. 718, 730 n.9, 731 (2017).

---

[5] With respect to the third and fourth examples, Plaintiffs contend that Keating breached his "duty of care" in addition to his duty of loyalty.  "Professional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty." *Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 57 (1998). Because Plaintiffs have not asserted a negligence claim, the Court will not address the duty of care.

"The general principle for the agent's duty of loyalty according to the Restatement is that the agent must act solely for the benefit of the principal in matters connected with the agency." *Id.* at 731 (quotation marks and citations removed). The duty of loyalty includes a) the duty not to compete; b) the duty not to disclose confidential information; c) the duty to refrain from competing against the employer, including "competitive action taken directly by the employee with the employer, actions taken by the employee on behalf of third-party competitors of the employer, and other assistance furnished by the employee to the employer's competitors;" and d) the duty "to refrain from acquiring material benefits from third parties in connection with transactions undertaken on the employer's behalf," including "secret commissions and kickbacks." *Id.* at 732 (quoting 2 Restatement (Third), Agency, §§ 8.02, 8.04, 8.05).

### 1.  Keating's Work for Harleysville

Plaintiffs rely exclusively on Keating's deposition to prove the first event: that Keating worked with competitor, Harleysville. As previously explained, this evidence alone is insufficient to establish summary judgment.

The Court recognizes that two single-page e-mails cited in Plaintiffs' 56(a)(1) Statement show SR5 worked as a third party administrator to Harleysville in 2014 and that Keating served as the point of contact. (*See* Dkt. 138 at Ex. 6, pp. 217–218 of PDF.) But given this is the only evidence related to Harleysville, Plaintiffs have not presented sufficient evidence to satisfy all elements of a breach of fiduciary duty claim.

26

**2.      Unlawful Kickbacks**

**Plaintiffs provide slightly more evidence for the second incident—Keating's alleged illicit kickback scheme with "Attorney 1"—but it still falls short.  In addition to Keating's assertion of his Fifth Amendment right against self-incrimination in his deposition, Plaintiffs cite checks written by Jonathan P. Cohen made payable to SR5 for consulting services in 2015 and 2016 (Ex. 8), and SR5's TD Account Statement show Mr. Cohen and Kodiak periodically deposited money into the account from 2016 through 2020 (Ex. 9).  While Plaintiffs do not cite Exhibits 6, 13, or 20, the Court notes that this admissible evidence is cited in the Plaintiffs' 56(a)(1) Statement, and it establishes Keating is the sole member of SR5 and American Construction, and that SR5 is an owner of Kodiak.  (*See* Pls.' 56(a)(1) Stmt. ¶¶ 2, 9, 24, 29.)  Despite the Court's independent assessment of the record, it finds that Plaintiffs have not established the "kickback."  Meaning, Plaintiffs have still failed to establish as a matter of law that the checks in Exhibits 8 and deposits in Exhibit 9 are connected to payments Plaintiffs made to Keating's companies.  Summary judgment is not warranted on this ground.**

**3.      Failure to Disclose 50% Ownership Interest in "Asset Search Firm 1"**

**The Court has already assessed the third incident—that Keating retained "Asset Search Firm 1" without informing Plaintiffs he held a 50% ownership interest in the company—albeit in the context of fraudulent omission.  For the same reasons the Court explained *supra* in Part II(A)(2) of this Discussion, Plaintiffs cannot establish Keating breached his duty "to refrain from acquiring material benefits from third parties in connection with transactions undertaken on the**

employer's behalf," including "secret commissions and kickbacks" (or any other breach of fiduciary duty), because they have not established that he did not disclose his ownership.

### 4.    Payments to American Construction

The fourth incident encompasses the payments to American Construction that Keating authorized on Plaintiffs' behalf.  As the Court has already explained, even though admissible evidence establishes Keating owned American Construction, that on at least one instance the contract for services was signed by Keating (on behalf of Plaintiffs) and Robert Peterson (on behalf of American Construction), and that American Construction was paid for work on that contract, there is no admissible evidence establishing that Robert Peterson is a fictitious person or that Keating never informed Plaintiffs he owned the company.  Indeed, Robert Peterson could be a person with authority to enter into contracts on behalf of American Construction (like Keating is for Plaintiffs) even though he is not listed on the incorporation documents.  In construing the evidence in light most favorable to the non-movant, it is possible that Keating disclosed his ownership and that Plaintiffs for whatever reason waived the conflict.  Therefore, summary judgment is DENIED.

### D.    *Count Four: Breach of Contract Against American Construction*

Plaintiffs argue that American Construction entered into fraudulent construction service contracts with Plaintiffs, because American Construction never had an office, a physical presence, or employees, and it never intended to perform the work it promised to do.  (Dkt. 136 at 31.)  Plaintiffs seek to rescind these

contracts and obtain restitution of $984,250.00—the value they claim American Construction received without performing any work.  (*See id.*)

Plaintiffs have not even listed the elements of a breach of contract claim, let alone provide evidence supporting their assertions.  As with previous claims, Plaintiffs merely cite to Keating's deposition and rely on an adverse inference the Court cannot make.  Because there is simply no evidence for the Court to consider, the Court DENIES summary judgment as to this Count.

      E.    *Count Five: Breach of Implied Covenant of Good Faith and Fair Dealing Against American Construction*

Plaintiffs contend that Count Five, breach of implied covenant of good faith and fair dealing against Defendant American Construction, is moot upon the Court's awarding summary judgment on Count Four.  Because summary judgment is denied as to Count Four, it is DENIED as to Count Five as well.

      F.    *Count Six: Unjust Enrichment Against Both Defendants*

When justice so requires and there is no other remedy available, a plaintiff may recover under the doctrine of unjust enrichment.  *Horner v. Bagnell*, 324 Conn. 695, 707–08 (2017).  "With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard."  *Id.*  To prove unjust enrichment, a plaintiff must establish: "(1) that the defendants were benefits, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  *Id.* at 708.

As with Plaintiffs' other claims, the unjust enrichment claim is dependent on a key assumption unsupported by the evidence: that American Construction was paid for work it did not perform.  Accordingly, summary judgment is DENIED as to this claim.

## <u>CONCLUSION</u>

For the above reasons, summary judgment is DENIED.  The parties are instructed to file their Joint Trial Memorandum as ordered by the Court.

IT IS SO ORDERED.


_____
**Vanessa L. Bryant**
**United States District Judge**


**Order dated in Hartford, Connecticut on December 20, 2022.**