UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLIED WORLD INSURANCE COMPANY, ALLIED WORLD SPECIALTY INSURANCE COMPANY, ALLIED WORLD NATIONAL COMPANY, UNITED STATES FIRE INSURANCE CO.,<br>*Plaintiffs*;<br><br>v.<br><br>JAMES KEATING, AMERICAN CONSTRUCTION & INDUSTRIAL, LLC,<br>*Defendants*. | CIVIL CASE NUMBER:<br><br>3:21-cv-00058-VLB<br><br>September 22, 2023 |

## DECISION GRANTING PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. 151]

Before the Court is Plaintiffs' Renewed Motion for Summary Judgment. (Dkt. 151.) The Court presumes familiarity with the facts and law as stated in its decision on the Plaintiffs' Motion for Summary Judgment. (Dkt. 145.) As a brief background, in April 2022, Plaintiffs Allied World Insurance Company ("AW Insurance"), Allied World Specialty Insurance Company ("AW Specialty"), Allied World National Assurance Company ("AW National"), and United States Fire Insurance Company ("USFIC") (collectively, "Plaintiffs" or "Allied World") moved for summary judgment on all Counts but relied on inadmissible evidence—namely, a deficient declaration from one of Plaintiffs' representatives and an assumption the Court would draw an adverse inference against Defendant Keating for invoking his Fifth Amendment right against self-incrimination. Defendants James Keating and his company, American Construction & Industrial, LLC ("American Construction"), did not oppose the motion or raise evidentiary objections. The Court identified the evidentiary issues, denied summary judgment, and afforded Plaintiffs the

opportunity to correct the evidentiary issues through a renewed motion.  Plaintiffs timely did so.

Plaintiffs now seek summary judgment only as to Counts Two and Three: statutory theft against both Defendants and breach of fiduciary duty against Defendant Keating.  Neither Defendant responded.  For the following reasons, Plaintiffs' Renewed Motion for Summary Judgment is GRANTED.

I.     Evidence

In support of the renewed summary judgment motion, Plaintiffs submitted several declarations with accompanying exhibits.  The Court has independently reviewed the evidence in detail and finds the declarations and exhibits correct the deficiencies identified in the Court's initial summary judgment decision.  The Court will summarize the renewed summary judgment evidence accordingly.

A.  Beth Davidson

First is a declaration from Beth Davidson, Allied World Insurance Company's Vice President in the North American Claims Operations Group, who supervises North American claims operations and works closely with Plaintiffs' claims and payment systems.  (Dkt. 151-3 (Renewed Mot. Summ. J. Ex. D, Davidson Decl. & Exs. 5 & 6).)  She described the Plaintiffs' process for billing claims, the collection of American Construction claims conducted in January 2021, and her review of 469 documents resulting from the collection.  (*See id.* at Decl.)  Ms. Davidson stated,

> [T]hese documents do not reflect that Keating informed anyone at Allied World of any ownership interest he may have had in American Construction, and none of these documents reflect[ ] that anyone at Allied World consented to Keating authorizing payments to Allied World that he may have an ownership interest in that company.

**2**

(*Id.* at Decl. ¶ 9.)  Ms. Davidson incorporated Exhibits 5 and 6.  Exhibit 5 reflects payment requests which Keating made for American Construction, and Exhibit 6 reflects checks Allied World wrote to American Construction.  (*Id.* at Exs. 5 & 6.)

      B.  Kelly Doherty-Schaffner

Second is a declaration from Kelly Doherty-Schaffner, Allied World Insurance Company's Executive Vice President, Head of North American Claims Group.  (Dkt. 151-4 (Renewed Mot. Summ. J. Ex. E, Doherty-Schaffner Decl. & Exs. 1–4).)  Ms. Doherty-Schaffner personally hired Defendant Keating as a surety bond claims handler and served as his direct supervisor from approximately February 2014 through July 2019.  (*Id.* at Decl. ¶¶ 5, 7.)   Based on her personal knowledge, she stated that Plaintiffs put a "tremendous amount of trust and authority in its claims handlers"—including Defendant Keating—to review facts; make coverage evaluations on claims; retain attorneys, consultants, and other vendors based on their assessment of the facts; authorize payments to claimants, insureds, attorneys vendors, and others.  (*Id.* ¶¶ 9–13.)  In March 2014, she personally gave Defendant Keating permission to authorize payments up to $100,000, and his personnel file indicates that in September 2015 this authority was increased up to $350,000.  (*Id.*)

Ms. Doherty-Schaffner reviewed several documents related to payments Plaintiffs' made to American Construction.   From assessing claims, she determined that Defendant Keating purported to retain American Construction in late 2017 or early 2018.  (*Id.* ¶ 18.)  She assessed American Construction's business organization documents and, because she was Defendant Keating's direct supervisor, she recognized the signatures as Defendant Keating's.  (*Id.* ¶ 19.)  In

3

addition, Ms. Doherty-Schaffner reviewed a report generated from Plaintiffs' internal audit department, which showed Plaintiffs made 50 separate payments to American Construction.  (*Id.* ¶¶ 20–23.)  The internal audit report indicates that Defendant Keating authorized all of the payments to American Construction.  (*Id.* ¶ 24.)  She explained, "This money properly belonged to Allied World, and would not have been paid to American Construction without Keating's approvals and his purported entrance into contracts with American Construction on behalf of Allied World…."  (*Id.*)

Based on Ms. Doherty-Schaffner's personal experience, she explained that "it is unprecedented for a services provider to work on as many claims as American Construction purported to work on" without providing any evidence of work product or work-related communications with the service provider.  (*Id.* ¶ 28.)  She also stated that the supposed work performed often made no logical sense.  (*Id.*)  For example, on at least four occasions, Defendant Keating submitted a claim for a payment bond——i.e., a claim "to rectify an issue of non-payment, not lack of performance"—but also submitted a letter of intent for construction services.  (*Id.* ¶¶ 30–36.)  She also stated that the claims indicate American Construction would have been performing work across Georgia, Maryland, New Hampshire, and New York around the same time, which would have required a large staff to perform these services.  (*Id.* ¶ 37.)

Despite the fact that Ms. Doherty-Schaffner was his direct supervisor, he never disclosed his ownership of SR5, LLC or American Construction to her.  (*Id.* ¶¶ 16, 38.)  She also reviewed his personnel file and did not find any documentation

that he disclosed his ownership interests to Plaintiffs.  (*Id.* ¶¶ 17, 39.)  To her knowledge, no one knew about Defendant Keating's ownership interest in American Construction while he authorized payments to his company.  (*Id.* ¶ 39.)

Along with the declaration, Ms. Doherty-Schaffner submitted the internal audit report that generated all payments Plaintiffs made to American Construction (Exhibit 1); documents related to claim number 2016026622-1, a payment bond claim that illogically included a letter of intent for services (Exhibit 2); other payment bond claims with services contracts (Exhibit 3); and Plaintiffs' Code of Business Conduct and Ethics from October 2017 (Exhibit 4).  (*See* Dkt. 151-4.)

    C.  Guyon Knight

Third is a declaration from Guyon Knight, Plaintiffs' counsel.  (Dkt. 151-5 (Mot. Summ. J. Ex. F, Knight Decl. and Exs. 8–12).)  The purpose of his declaration is to authenticate Exhibits 8 through 12.  Exhibits 8 and 9 are certified records of SR5 and American Construction, respectively, from the Pennsylvania Department of State.  (*Id.* at Decl. ¶¶ 4–5.)  Exhibit 10 contains American Construction's discovery responses and all documents it produced in this litigation.  (*Id.* ¶ 6.)  Exhibits 11 and 12 are certified documents that TD Bank produced in response to Plaintiffs' subpoena.  (*Id.* ¶ 7.)

    D.  Michael McTigue

Fourth is a declaration from Michael McTigue, Senior Vice President, General Counsel and Secretary of Crum & Forster, one of Plaintiffs' affiliates and the parent company of USFIC.  (Dkt. 151-6 (Mot. Summ. J. Ex. G, McTigue Decl. and Ex. 7.)  Based on his review of Defendant Keating's personnel file, Mr. McTigue concluded

5

that Defendant Keating certified and signed the USFIC Code of Business Conduct and Ethics on July 12, 2019.  (*Id.* at Decl. ¶ 6.)  He included the signed Code of Business Conduct and Ethics as Exhibit 7.  (*Id.* at Ex. 7.)  While Defendant Keating certified he did not have any interest or affiliation that would be a conflict of interest, he never disclosed his ownership interest in SR5 or American Construction.  (*Id.* ¶¶ 6–7.)  Mr. McTigue also stated that his is not aware of any other Crum & Forster employee consenting to Defendant Keating's authorization of payments to American Construction.  (*Id.*)  Because he is General Counsel, he would have known if such consent was given.  (*Id.*)

## II.     Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). The movant must do so by "citing to particular parts of materials in the record, including depositions, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Vivenzio*, 611 F.3d at 106 (citing *Liberty Lobby,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  This means that "although the court should

review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

When the non-movant fails to oppose summary judgment, the court "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). While a court may consider unopposed facts undisputed for the purposes of the motion, *see* Fed. R. Civ. P. 56(e)(2), it must still ensure all other Rule 56 requirements are met, including that the underlying evidence supports summary judgment. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (explaining a Rule 56(a)(1) "statement must reference admissible evidence (when presented at trial in the form of testimony or other permissible method) in the record tending to prove each such fact, e.g., deposition testimony, admissions,

7

answers to interrogatories, affidavits, etc…."); *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met."). After identifying the material facts that are not in dispute, the Court may thereafter consider summary judgment on its own. *See* Fed. R. Civ. P. 56(e)(3).

### III. Analysis

As with the initial summary judgment motion, Defendants failed to oppose Plaintiffs' briefing. This Court has assessed the record and references admissible evidence cited by Plaintiffs in their Local 56(a)(1) Statement.

#### A. Count Two: Statutory Theft

Section 52-564 of the Connecticut General Statutes provides, "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Conn. Gen. Stat. § 52-564. As the Connecticut Supreme Court has explained, statutory theft is akin to larceny, which is defined by "fraudulent methods of taking property from its owner, including when a person obtains property by false pretenses." *Scholz v. Epstein*, 341 Conn. 1, 18 (2021) (citing Conn. Gen. Stat. §§ 52-564 (statutory theft) and 53a-119 (larceny)). The plaintiff must prove the following elements: "(1) defendant intentionally deprived plaintiff of property, (2) the property belonged to plaintiff, and (3) the defendant's conduct was unauthorized." *Andrade v. Kwon*, No. 3:08cv479 (SRU), 2012 WL 3059616, at * 7 (D. Conn. Mar. 26, 2012) (citing *Discovery Leasing Inc. v. Murphy*, 33 Conn. App. 303, 309 (1993)). The standard of proof,

8

including for damages, is preponderance of the evidence.  *Stuart v. Stuart*, 297 Conn. 26, 53 (2010).

Starting with the first element, the record indicates Defendant Keating acted with the requisite intent.  Over the course of 49 claims from January 2, 2018, through December 17, 2020, Defendant Keating authorized Plaintiffs to pay a total of $984,250 to American Construction for their payment and performance bond claims.  (*See* Dkt. 151-2 (56(a)(1) Stmt.) ¶ 42; Dkt. 151-3 at Ex. 5.)  Plaintiffs then issued checks to American Construction that totaled the same amount.  (*See id.* at Ex. 6.)  All of these checks except one check issued December 17, 2020 that totaled $16,500 were all deposited into American Construction's TD Bank Account, which Defendant Keating opened, was an account holder, and was listed as one of the business's "officers, employees, members or agents."  (*See* Dkt. 151-5 at Ex. 11 at TD0000018–19, 1271–72.)  No reasonable juror would conclude that Defendant Keating lacked the specific intent to deprive Plaintiffs of their property when he authorized payment <u>49 separate times.</u>  *See Howard v. MacDonald*, 270 Conn. 111, 132 (2004) (stating evidence of "the lengths to which the defendant had gone to gain control over the funds" established specific intent); *Fenn v. Yale Univ.*, No. Civ.A. 396CV(CFD), Civ.A. 396CV990(CFD), Civ.A. 396CV1647(CFD), 2005 WL 327138, at *4 (D. Conn. Feb. 8, 2005) (finding intent element satisfied where defendant acted under false pretenses).  After reviewing the record in the light most favorable to Defendants, the Court concludes Defendant Keating authorized the payments with the intent to deprive Plaintiffs of their property and that checks valuing $967,750—$985,240 minus the $16,500 check that was never deposited in

9

the TD Bank account—were deposited in an account which he owned and to which he had access.

With respect to the second element, the evidence indicates the property at issue belonged to Plaintiffs.  Plaintiffs submitted American Construction's responses to their discovery requests in which they sought "all work product produced or commissioned" for Plaintiff's benefit and "all documents and communications concerning" the claims at issue.  (*See* Dkt. 151-5 at Ex. 10, RFPs 17, 19.)  American Construction's response: "None."  (*Id.*)  Absent evidence establishing American Construction performed any work, a reasonable jury could not conclude Defendants were entitled to be paid for its services.  Accordingly, the $967,750 deposited in American Construction's TD Bank account belonged to Plaintiffs.

As for the third element, the record establishes that Defendant Keating's conduct was unauthorized because he never informed his employer that he owned SR5 or American Construction.  (Dkt. 151-3 at Decl. ¶¶ 9–12; Dkt. 151-4 at Decl. ¶¶ 16–17, 38–40; Dkt. 151-6 at Decl. ¶ 7.)  In addition, on July 1, 2019, Defendant Keating signed a USFIC Code of Ethics certifying in relevant part that he did not have a conflict of interest and was not an officer or director of any company other than his employer (or one of its affiliates).  (Dkt. 151-6 at Ex. 7 (USFIC Code).)  Part of Defendant Keating's fiduciary duty included his duty to disclose his ownership interests in his companies.  (*See* Dkt. 148 at 20.)  While Defendant Keating was authorized to approve payments up to $100,000 (and later $350,000), Ms. Davidson, Ms. Doherty-Schaffner, and Mr. McTigue declare that he did not have authority to

approve payments to a company that he owned or held an interest when they did not know about his ownership interests.  (*See* Dkt. 151-3 at Decl. ¶¶ 9–12; Dkt. 151-4 at Decl. ¶¶ 12, 16–17, 38–40; Dkt. 151-6 at Decl. ¶ 7.)

Accordingly, Plaintiffs have satisfied that all elements of statutory theft. Under § 52-564, Plaintiffs are entitled to treble damages.  While the statute and legislative history are silent as to calculating treble damages, the prevailing norm in Connecticut is "summarily to treble the amount of a plaintiff's harm."  *Emigrant Mortgage Co., Inc. v. Travelers Prop. Cas. Corp.*, No. 3:16-cv-429 (SRU), 2020 WL 616577, at *5 (D. Conn. Feb. 10, 2020) (collecting cases).  Because the total value of Plaintiffs' property deposited in the TD Bank account was $967,750 and § 52-564 awards the owner treble his damages," Defendants shall pay Plaintiffs treble damages of $2,903,250.

    B.  Count Three: Breach of Fiduciary Duty

"For a breach of fiduciary duty claim to succeed, a plaintiff must meet four elements: '[1] [t]hat a fiduciary relationship existed which gave rise to ... a duty of loyalty[,] … an obligation ... to act in the best interests of the plaintiff, and … an obligation … to act in good faith in any matter relating to the plaintiff; [2] [t]hat the defendant advanced his or her own interests to the detriment of the plaintiff; [3] [t]hat the plaintiff sustained damages; [and] [4] [t]hat the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty.'"  *Roe v. Hotchkiss Sch.*, 385 F. Supp. 3d 165, 172 (D. Conn. 2019) (quoting *Chioffi v. Martin*, 181 Conn. App. 111, 138 (2018)).

As Plaintiffs correctly point out, this Court ruled in the initial summary judgment decision that Defendant Keating owed Plaintiffs a fiduciary duty, including the duty of loyalty.  The Court has reviewed Plaintiffs' briefing and evidence and finds it persuasive.  In addition, the same evidence that satisfies the statutory theft claim also satisfies elements two through four of the breach of fiduciary duty claim.  Specifically, Defendant Keating advanced his own interests to Plaintiffs' detriment by authorizing payments to American Construction—a company in which he held an ownership interest, unbeknownst to his employer— 49 times for a total of $984,250 when American Construction performed no work for Plaintiffs' benefit. (*See* Dkt. 151-3 at Decl. ¶¶ 9–12 & Exs. 5–6; Dkt. 151-4 at Decl. ¶¶ 16–17, 38–40; Dkt. 151-6 at Decl. ¶ 7.)  All of these payments except $16,500 were then deposited in a bank account which Defendant Keating owned and to which he had access.  (Dkt. 151-5 at Ex. 11 at TD0000018–19, 1271–72.)  Plaintiffs suffered damages, because they paid American Construction without the company performing any work for it; in other words, they paid without receiving the benefit of the bargain.  (*See* Dkt. 151-3 at Exs. 5, 6.)  Defendant Keating's actions proximately caused Plaintiffs' damages because the record shows "an unbroken sequence of events that tied" Plaintiff's loss of nearly $1 million to Defendant Keating's authorization of payment to American Construction.  *Bozelko v. Papastavros*, 323 Conn. 275, 283 (2016) (defining proximate cause for breach of fiduciary in attorney malpractice case).  As with the statutory theft claim, Plaintiffs' actual damages total $967,750—the total amount deposited in American Construction's TD Bank account.

In any event, when a defendant is alleged to have engaged in self-dealing and the plaintiff establishes the fiduciary relationship exists, the burden shifts to the fiduciary to prove fair dealing by clear and convincing evidence. *See Chioffi*, 181 Conn. App. at 139; *Culhane v. Culhane*, 969 F. Supp. 2d 210, 224–25 (D. Conn. 2013) (same). Evidence of a fiduciary's fair dealing may include: "(1) that he made a free and frank disclosure of all the relevant information he had; (2) that the consideration was adequate ... (3) that the principal had competent and independent advice before completing that transaction ... [and] (4) the relative sophistication and bargaining power among the parties." *Id.* By failing to respond to Plaintiffs' motions for summary judgment, Defendant Keating has not presented any evidence of fair dealing. Summary judgment is GRANTED as to Count Three.

IV.     <u>Conclusion</u>

For the above reasons, summary judgment is GRANTED as to Counts Two and Three. Plaintiffs have presented evidence sufficient to award actual damages of $967,750 under both Count Two and Three and treble damages of $2,903,250 under Count Two. Counts One and Four through Six will proceed to trial. Should either party request the opportunity to further brief damages, they may inform the Court and a briefing schedule will be set once trial concludes. This case is referred to a magistrate judge for settlement conference.

                                                          **IT IS SO ORDERED.**

                                                          Vanessa L. Bryant
                                                          United States District Judge

**Order dated in Hartford, Connecticut on the 22nd of September, 2023.**